All right, so we'll submit that case and move to the second case, which is 19-13578, Andrade-Rodriguez v. U.S. Attorney General. And I think we have a remote participant, so we'll give our IT guru a chance to get that all fired up. If the remote participant hasn't just quit at this point. I hope he's still here, didn't give up on us. There he is. Mr. Alcina. Yes, sir. Good morning. Two for two. You may proceed when ready. May it please the Court. In this case, Your Honors, the petitioner is seeking review of the Board of Immigration Appeals denial of his motion to reopen, filed close to four years after the final order of removal had been entered in his case, and where he argued for equitable tolling because of a change in law. The Board, in this case, did not really give adequate consideration of the respondents of the petitioners. I'm sorry. The petitioner's equitable tolling claim, they simply ruled that they were not persuaded that equitable tolling was warranted in this case. They also did an alternative ruling that even if they had, even if his motion had been timely, he would not be eligible for cancellation of removal, which was the relief that he would be seeking with the motion to reopen because of its erroneous interpretation that a notice to appear that did not include the time and date of a hearing could be perfected with another document, namely a notice of hearing that contained that information. That interpretation was in conflict with the Supreme Court's decision in Pereira v. Session, which was the reason why the respondent moved the Court, the Board, to reopen when he did. And more recently, that interpretation was also invalidated by the Supreme Court in the matter of— Let me ask you to address something that the government says. So for the first time in its supplemental brief, and I have some questions for the government about whether it was proper for them to make this argument in their supplemental brief, but for the first time, they say that a basis for us to affirm, for lack of a better word, the BIA's decision here, is that our precedents say that changes in the law are not by themselves sufficient for equitable tolling. And so even though the BIA didn't say that, and the government didn't say that in its initial brief, and I think that's inconsistent with what the government did say in its initial brief, what do you say about the idea that our law says that changes in the law don't allow equitable tolling? I say that's not exactly what this Court and the Supreme Court have said regarding a change in law. Starting with Gonzalez v. Crosby, the Supreme Court, in that case, even though they determined that Gonzalez had not presented extraordinary circumstances that would warrant equitable tolling in his case, they did notice that part of that reason was because he had not been diligent in pursuing his case. But the Court did note on a footnote on page 537 that a change in the interpretation of a substantive statute may have consequences for cases that have already reached final judgment. And also in that same case, I believe this was the concurring opinion, they said that sometimes a supervening change in procedural law, even though it may not alone warrant reopening, there may be special factors that satisfy the high standard for equitable tolling. And they specifically cited the example when a prisoner shown he has reasonably and diligently been seeking relief in his case and that if he also can show that there is a probable merit to his underlying claim, he may meet that higher burden for equitable tolling. The government did cite a specific case, Outler, and I believe this Court, there's a series of cases, Outler, also Howell v. Secretary of Florida Department of Corrections, and Arthur v. Thomas. And I believe all those three cases refer to a change of law as whether it's sufficient to establish the extraordinary circumstance or not. They don't say a change of law is not going to be sufficient. They say, they ask the question whether a change of law can be sufficient. And to that end, this Court, in the case of Ritter v. Smith, noted that sometimes a clear-cut change in the law will suffice for relief, but at other times, when it may not be enough, there may be other circumstances that are sufficiently, I'm sorry, extraordinary, to warrant relief under Rule 60B-6, which is habeas corpus for all three cases. Can I ask you a quick question just about this? Yes, sir, please. Is the rule that we apply in the habeas context, that a change in law is, presumptively anyway, not sufficient to establish extraordinary circumstances for equitable tolling purposes, does that just sort of like carry over lock, stock, and barrel to the immigration context, or is there a reason that we might treat the rule differently in the two contexts? I believe we treat them similarly, and you are going to have to excuse me, because I left some of my notes on the airplane on my way here. There is a specific case that says that we treat them similarly in the same context for immigration purposes. Where I was getting at was that a change in law in and of itself may not be sufficient, but it's also not insufficient in and of itself. In that case of Brita, for example, it was the government who was arguing for reopening of a habeas corpus, and the prisoner who had been granted habeas was arguing that a change in the law could not be a sufficient basis for reopening, and the court said that it's really not. In some cases, it may be very clear that it is, and in other cases, it may not be. In this case, we would argue that it is. The change that was brought about by Pereira and Ms. Chavez is significant because it made the petitioner, and we call the petitioner the respondent before the board. That's why I keep getting it confused. I'm sorry. You can just use names if you want to. Thank you. Mr. Andrade made him eligible for relief that was previously not available to him. I think that the board's decision does not contain enough findings for this court to make a meaningful review, and that's why we would pray that it's sent it back. But I think that the petitioner has made his case for equitable tolling because he has been diligently pursuing his rights. Even after he was order removed, he went to the Enforcement and Removal Office of the government, and he requested stays and deportations every year. As soon as the decision of Pereira came out in 2018, he learned about it in the month of August, and in mid-October, 24th of October, I think, he had filed his motion to reopen. I think that the change in the law constitutes an extraordinary circumstance. Together with the factors, if this court considers that he came to the United States when he was 15, his removal proceedings lasted for six years, most of which he was still a minor. During that time, he went to high school, he met a girl, he had a son with her, eventually married her. And what's important to this case about that marriage is that his wife and his stepson are both also citizens of Guatemala who have been granted asylum, and a person who has been granted asylum has been deemed to meet the definition of a refugee, which is a person whose life or liberty is deemed to be in danger if returned to the country of origin because of one of the enumerated grounds for asylum. So when we consider all those circumstances, and also the fact that the Supreme Court has established that deportation is always a particularly severe penalty, that's in the case of Padilla versus Kentucky, and the court recognized that preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence. When we put that interest of remaining in the United States versus separating or taking his refugee family back to the country where they face persecution, Mr. Andrade respectfully submits that, in this case, he has met the extraordinary circumstance test also for equitable dwelling. And as such, we would respectfully request that the case be remanded. Okay, very well. Judge Brasher. Judge Branch, do you have any questions? I do not. Okay, very well. You've saved your three minutes for rebuttal. We'll hear from you after the government. Mr. Pennington, you may proceed when ready. Thank you, Judge Newsom, and good morning. Greg Pennington for the Attorney General. I'll start by addressing Judge Brasher's concerns about some inconsistency, and I readily concede that the position has changed subsequent to the Supreme Court's decision in Nez Chavez. You know, in the answering brief, we talked about equitable tolling as if Mr. Andrade was not eligible for cancellation of removal. And I thought long and hard about whether a voluntary remand would be required under this Nez Chavez decision. But in the end, reading the board's decision, Nez Chavez, if you excise the board's discussion on the stop time rule from that decision, it's still upholdable and remand would ultimately be futile because the board ultimately denied it timely and then assumed it was timely in his discussion and responding to the arguments he made in the motion to reopen regarding the stop time rule. And so given that the motion to reopen was untimely, that left him only with equitable tolling. And looking at the board's decision, you know, in equitable tolling, they say, as for Mr. Andrade's request that he wants to apply for cancellation, we are not persuaded that equitable tolling is warranted. That's all the board really said, and I agree that that is pretty terse. They don't fully explain, but I would implore the court to look at how it was presented to the board in the motion to reopen at pages 20 and 21 of the administrative record. The whole equitable tolling argument was simply a recitation of that equitable tolling applies to the statutory deadline, the factors that the board should consider, and then a blanket statement that Pereira constituted an extraordinary circumstance that equitable tolling should apply to the four year untimely motion to reopen. And ultimately, if you look further in that paragraph on the board's decision, it says that becoming eligible for relief from removal years after the final order of removal is not an exceptional circumstance. So in fairness, though, there the court is clearly addressing, the board is clearly addressing its power to sua sponte reopen, right? Because what follows the passage that you just read does not in and of itself present an exceptional circumstance. And we declined to use our sua sponte authority to reopen and terminate that proceeding. Right. So with respect to equitable tolling, the board basically says nothing with nothing about Pereira, nothing about nothing. And with respect to sua sponte reopening, the board then goes on to discuss there is an exceptional circumstance exception or something. And it doesn't apply here. That is absolutely true, Judge Newsom. And but as this court kind of alluded to in a via Santiago, which was the en banc decision saying that equitable tolling applies to the statutory deadline, it discussed the interplay between the regulations on sua sponte reopening and the presumption that equitable tolling should apply to the statutory deadline, because the board uses the same language in determining whether to sua sponte reopen as this court has set forth as the test for equitable tolling, whether an exceptional circumstance is present, either that warranted equitable tolling of the statutory deadline or that warrants the board using its own authority to sua sponte reopen. So I would say even though that certainly could have cited case law and certainly could have said more about it, that the court should hold that it's harmless error because it said that not an exceptional circumstance present, even though it was doing so apparently in discussion on sua sponte. Yeah, here's the issue I have with that, though. The board's analysis seems to suggest that the reason there's no extraordinary circumstance is because it had already concluded that, I forget, Andrande Rodriguez, I'm sure that's not right, but doesn't get the benefit of Pereira, that Pereira would not have given him any benefit. Right. Isn't that why the board is saying no extraordinary circumstance, no equitable tolling. And now that now from Nisha, as we know, well, he may get the benefit. So if the court were to decision that way, then remand. Well, that's the way you read it in your initial brief. In your initial brief, you said the best. I'm quoting from your initial brief just to put it on the record. Quote, the best reading of the board's decision is that it was declining to apply equitable tolling because Pereira did not constitute a change in the law because Andrande is still ineligible for cancellation despite that decision. End quote. So that's the way you read it in your initial brief. Why should we read it a different way now? I agree that that is a reading of it because the board was discussing. We have to because that's what you said in your brief. And that's why I got into the point of, well, what's what's the remedy here? And that's why I decided that remand or seeking remand wasn't warranted, because ultimately, as a matter of law, equitable tolling shouldn't apply because this court has held that a change in law does not constitute an extraordinary circumstance. So let me ask you the same question. Let me ask you the same question. I asked Mr. Alcina. The cases you cite for that proposition that a change in the law does not constitute an exceptional circumstance, I think anyway, are habeas cases. And is there a reason that we might treat immigration cases differently? Mr. Alcina says not necessarily. But I guess the reason I ask that is that the habeas statute is like shot through with the AEDPA statute, I mean, is shot through with these references about sort of how it is that changes in the law sort of get made and matter for habeas purposes. At every turn, the statute says something like clearly established law as, I'm sure I'm butchering the language here, but sort of as decreed by the Supreme Court and made retroactive to cases sort of on collateral review or something like that. So there's kind of like this specific terminology that the court uses in the habeas statute with respect to changes in law. And then over here on the immigration side, you don't really have any of that. So does Outlaw, for instance, just carry over lock, stock and barrel to the immigration context? Or is there a reason that we might think that changes in the law on the immigration side might matter in a way that they don't because statutorily precluded in effect on the habeas side? I would say that it's still, as the Supreme Court has discussed equitable tolling, it's, you know, it's a question of law that should be carried over between different areas. And as I cited in the supplemental brief, a recent panel of this court held the same thing as what we're asking the court to hold here. It dealt with the same almost the same exact issue where there was an untimely motion to reopen, saying that Pereira was a change in law that required equitable tolling. And that was the Eloy case. So a prior panel of this court has agreed with that. And Mr. Andrade hasn't put forth an argument as to why they shouldn't be similar. He even conceded during argument in his opening argument that they are in a similar context. So I would argue that because it's a question of law as to whether you toll a statutory deadline, it should carry over to the immigration context. And Mr. Andrade's case is kind of an example why. You know, Mr. Andrade was in removal proceedings for roughly six years. He was never eligible for cancellation of removal during his removal proceeding. He was entered the U.S. in 2008. His removal proceeding ended in 2014. Even if Ms. Chavez, with the law of the land, during the removal proceeding, he was not eligible for cancellation of removal. And so four years after the removal order is final and after Mr. Andrade has, you know, gotten a qualifying relative for cancellation and then accrued the 10 years, he files for this motion to reopen. And that happens a lot with the board. People who are removed gain equities in the United States and ultimately have a piece of petition filed for them, and they seek to reopen their proceedings. And the board has always held that that's just not an extraordinary circumstance to warrant reopening a years-old removal proceeding. That's quite common. So even in the sua sponte context, the board has the authority to say a change in law might constitute a reason to sua sponte reopen. But it shouldn't carry over to tolling a statutory deadline as federal courts and the Supreme Court routinely alter the immigration laws through cases. It would really kind of open up a whole lot of motions to reopen based on changes to the law, saying that equitable tolling automatically applies with every new decision that comes out. But I don't think anybody is saying, I guess, I guess that's where, I mean, nobody's saying that you sort of automatically get equitable tolling. I think that what is sort of at issue in this case is whether you automatically don't get equitable tolling, right? That there's some prohibition on using a change in the law as a basis for equitable tolling. Is there a bright line rule that says no equitable tolling ever on the basis of a change in the law? Or is, you know, it's equitable tolling. So it's kind of a case-by-case basis. I mean, if the Supreme Court comes out with the equivalent of Gideon v. Rainwhite, maybe you get equitable tolling. If it comes out with just some sort of standard civil procedure opinion, maybe you don't. I mean, is that, is, what about that? Well, I would say that the board has provided a good example of where maybe it could, there could be an exception if there was a profound change in the law. So if you look at the board's decision in matter of XGW, where Congress rewrote the definition of refugee to say that people who have been subject to a forced abortion or sterilization are automatically, have passed persecution on account of political opinion. So the board said that that was such a profound change in the law that it constitutes an extraordinary circumstance. So there doesn't have to be a bright line rule saying that no change in the law can ever be subject to equitable tolling. But at least in this case, where this issue was heavily litigated in between Pereira and Ms. Chavez, this was just incremental changes in the law, which Mr. Andrade himself could have raised during his removal proceeding had he even been eligible for cancellation of removal. But again, he wasn't. This is something that happened subsequent to the final order of removal. And there has to be some sort of finality in removal proceedings. The government has a strong interest in finality in removal proceedings to not say that every time there is some change in the law, you can come and get equitable tolling, regardless of how late your motion to reopen is. So I would say that the court doesn't have to create a bright line rule. Can I ask you a quick question? And, you know, maybe I should know the answer to this, but I don't. So, you know, it may be true that not every change in the law is sufficient. Profound changes, maybe they are. And you were saying earlier that, you know, this was sort of an incremental change.  What was the state of the law in the BIA and in the 11th Circuit, I guess, for that matter, before Pereira with respect to this issue? Like, had he made the argument, would he have been foreclosed by BIA precedent or 11th Circuit precedent? Or could he – you're saying that it was a blank slate. He could have been the pioneer to make the argument. Well, no, he couldn't, because he – even if Ms. Chavez was the law in 2008, when he was in his removal proceeding, he didn't have the 10 years of continuous presence. He didn't even have a qualifying relative to apply for cancellation of removal. So, you know, he was actually only 15 at the time he crossed the border in 2008. So, only after the removal order became final in 2014 did he have his first child in the United States, therefore now having a qualifying relative for purposes of cancellation of removal. And then until 2018, he didn't have the continuous physical presence for cancellation of removal. So, even if he would have made the argument, even if that was the law of the land or not the law of the land, he was not eligible for cancellation of removal or anything else other than what he applied for in his removal proceeding that ultimately ended in his final order of removal. So, in some cases, they could have made the argument. And I would note that subsequent to Ms. Chavez, ICE went on to campaign with the private bar to say that if anybody was denied cancellation of removal during their removal proceeding based on the stop time rule that was overturned in Ms. Chavez, that ICE would join in motions to reopen to allow those people to apply for cancellation. And again, that's just not the case here. This is something that happened subsequent to a final order of removal is eligibility. And I see my time is ticking down. I don't want to take the court over unless there's further questions. Judge Branch, do you have questions? I do not. Okay, very well. Thank you so much, Mr. Pennington. Mr. Alcina, you have 30 minutes of rebuttal time. Very briefly, Your Honors, in Mr. Andrade's initial brief, he stated that one of the reasons why he could not have exercised his right to apply for cancellation of removal before was precisely that controlling law would not allow it. There had to be a change in the law for him to be able to become eligible to apply for cancellation of removal. And we agree with Judge Boucher's question that... You can stop there. You agree with all of his questions. If you don't have any more questions... Well, look, here's the question I have for you. So the government makes a good point that he only became eligible for this relief post the final order. If we do what you're asking us to do, it seems highly likely to me that the BIA will write a different decision and also say, no, we're not granting you equitable tolling, we're not reopening, no. Is there any reason for us to think that there would be some different outcome? It would be good for them to consider his application in the merits. The regulations provide that a motion to reopen for an alien to apply for a different form of relief will not be granted unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing. So the regulations contemplate that this may happen. Also, for equitable tolling, we don't really look at how much time has passed. We look at whether the person has been diligently pursuing his rights and whether an extraordinary circumstance stood in his way. And in this case, we would argue that both are present. Mr. Andrade could not have, obviously, applied for cancellation until he became eligible for it. But in the meantime, he did not disappear. He remained reporting to ICE every year requesting a state of deportation. And the fact that the order of removal was not executed is one of the criteria mentioned in the case of Reiter versus Smith, that the order has not been executed could be a factor that assists in elevating the circumstances to the high level of Rule 60B. And the extraordinary circumstances were present because the controlling law would not allow for him to move forward earlier. So we would argue that this was a significant change in the law that made him eligible for a new form of relief for which he was not eligible before, and that he acted diligently and promptly as soon as the opportunity arose. And had it not been for that change in law, he would not have been able to apply. We wouldn't be here. Okay, very well, Judge Branch. Do you have any questions? Okay, good. Thank you so much, Mr. Alsino. That case is submitted.